UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 24-cr-505-DLF |
| | : | |
| DESHAWN LOGGINS | : | |
| | : | |
| Defendant. | : | |

## MOTION TO SET CONDITIONS OF RELEASE AND REQUEST FOR HEARING

Defendant Deshawn Loggins ("Mr. Loggins"), by and through his attorneys, Michael E. Lawlor, Adam C. Demetriou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits this Motion to Set Conditions of Release and Request for Hearing.[1] In support of this Motion, counsel state the following.

## Introduction

Deshawn Loggins is a 23-year-old father and a lifelong resident of the Washington, D.C. metropolitan area. Mr. Loggins comes before the Court with one prior conviction for which he is currently on supervised release before this Court. *See United States v. Loggins*, No. 21-cr-465-DLF (D.D.C.). Mr. Loggins was

---

[1] Counsel were due to file this motion on or before January 30, 2025. Counsel apologize to the Court for the tardiness of this submission. In order to prepare the motion, counsel had to meet with Mr. Loggins at the jail and confer with his family members. Additionally, at the beginning of last week, lead counsel for Mr. Loggins fell ill and was out of the office. Counsel respectfully request that the Court accept this motion for filing and address it at the February 7 hearing.

1

arrested in connection with the conduct alleged in this case on June 6, 2024. The Government elected not to proceed with formal charges at that time. For the next several months, remained on supervised release and appeared before this Court for a compliance hearing. Mr. Loggins was aware that law enforcement was continuing its investigation of the June 6 matter. Indeed, after a hearing before this Court on September 10, 2024, Mr. Loggins provided members of law enforcement with his cell phone and a DNA sample in response to search warrants for those materials. Mr. Loggins continued to check in with his probation officer and did not flee the jurisdiction.

On November 7, 2024, the Government obtained an Indictment related to the June 6 allegations. Since his arrest on November 8, 2024, Mr. Loggins has been incarcerated at the D.C. jail. While the Government has charged Mr. Loggins with serious offenses, Mr. Loggins submits that there is ample evidence to rebut the presumption of detention in this case. An analysis of the 18 U.S.C. § 3142(g) factors reveals that there are conditions of release that can both reasonably assure Mr. Loggins' presence in court as required and the safety of the community. Mr. Loggins respectfully requests that this Court schedule a detention hearing in this matter.

**Background**

On July 19, 2022, Mr. Loggins pled guilty in 21-cr-465-DLF to conspiracy to distribute and possess with intent to distribute cocaine base. On October 27, 2022,

the Court sentenced Mr. Loggins to 42 months of imprisonment to be followed by 36 months of supervised release. Mr. Loggins was released from the Bureau of Prisons on January 31, 2024 and began his term of supervision on that date.[2] After his release from prison, Mr. Loggins began residing at a home on Calder Drive in Capitol Heights, Maryland. Mr. Loggins was supervised by United States Probation Officer Ian Bates, who verified Mr. Loggins' residence.

At around 3:39 p.m. on June 6, 2024, a host of MPD officers from the Special Missions Unit responded to 108 Atlantic Street SE to conduct what is described in various police reports as a "building check."[3] The officers claim that there had been ongoing, unspecified complaints from the location. Officers also claim that a property manager was aware of the SMU's operation at the location.[4] After opening the main door to 108 Atlantic Street and walking up a small landing, officers encountered four young men in a hallway outside of Apartment 101. The door to the apartment was open. Mr. Loggins was seated in a lawn chair in the hallway outside of the apartment. Officers claim to have found a prescription bottle containing a small amount of suspected promethazine-codeine near Mr. Loggins' feet. The

---

[2] Mr. Loggins was not placed on home detention or location monitoring as a condition of supervised release.
[3] The subject building contains several apartments.
[4] The Government has not provided any 911 recordings or other materials related to calls for service at the apartment building. Accordingly, Mr. Loggins is not aware of the nature of the "ongoing complaints."

officers detained all four young men. At 3:59 p.m., officers handcuffed Mr. Loggins in the hallway of the apartment building. The officers explained that the suspected promethazine formed the basis of the arrest. While Mr. Loggins stood handcuffed in the hallway, officers searched him, fumbling around near his pants pockets.

At 4:03 p.m., officers led Mr. Loggins outside of the apartment building. Mr. Loggins was still handcuffed. At 4:04 p.m., an officer directed Mr. Loggins to a parking lot outside of the apartment building and had him stand next to an MPD vehicle. Two officers then searched Mr. Loggins' person. From Mr. Loggins' person, the officers recovered cash and a set of car keys. Those items were placed into evidence collection bag. One of the officers handed the bag to another officer. At 4:05 p.m., Mr. Loggins was placed into a police car. Meanwhile, the officer who had taken possession of the property recovered from Mr. Loggins' person approached two other officers. That officer pressed a button on the car keys, at which time a Dodge Charger in the parking lot beeped.[5] The officer asked whether he should call for a K-9 to search the Charger to which Mr. Loggins had the keys. Another officer responded that the officers should wait for an emergency search warrant: "Let's wait for the ESW; he's not going anywhere".[6]

---

[5] After handling the car keys, the officer dropped the keys on the ground. The officer then placed the keys back into the evidence collection bag.

[6] The officers had already decided to seek an emergency search warrant for Apartment 101.

4

At 4:20 p.m., an officer began driving Mr. Loggins to a police station.[7] At 4:32 p.m., Mr. Loggins arrived at the station. Other officers remained on scene at 108 Atlantic Street and awaited receipt of a warrant to search Apartment 101. By approximately 10 p.m., officers obtained a warrant to search Apartment 101.[8] Officers entered the apartment at 10:04 p.m.[9] Officers *did not* obtain a warrant to search the Dodge Charger, which remained in the parking lot. At approximately 10:20:10 p.m., an officer began to scan the Charger with a drug detecting K-9. At 10:20:39, as the dog sniffed the car and before there was any indication of an alert, officers discussed the possibility of enlisting a gun detecting dog to sniff the car. At 10:21:10, an officer indicated that the drug detecting dog had a made a positive alert. Using the keys obtained from Mr. Loggins several hours earlier and in the absence of a warrant, officers began searching the Charger. Inside of the car, officers found

---

[7] Another officer was present in the front passenger seat.
[8] The officer who reviewed the operational plan with other members of the search team noted that officers had been on scene to hold the apartment throughout the afternoon and evening.
[9] Inside the apartment, officers recovered a firearm and narcotics. Mr. Loggins is not charged with offenses related to items found inside of the apartment. In search warrant applications and reports, law enforcement has claimed and implied that Mr. Loggins was present at the apartment during the execution of the search warrant. That is false. Mr. Loggins was removed from the apartment building shortly after 4 p.m. and then driven to a police station. Moreover, there is no evidence that Mr. Loggins was ever *inside* of the apartment on June 6.

suspected narcotics and a firearm. The Government alleges that one of the substances field tested positive for cocaine.[10]

The June 6 charges against Mr. Loggins were ultimately no-papered, and Mr. Loggins was released. After a hearing in the supervised release matter before this Court on September 10, 2024, members of law enforcement approached Mr. Loggins with search warrants for his cell phone and DNA. Mr. Loggins complied with the agents' demands. On November 7, 2024, the Government filed an Indictment charging Mr. Loggins with the following offenses related to items found inside of the Charger on June 6, 2024: possession with intent to distribute cocaine base; using, carrying, and possessing a firearm in furtherance of a drug trafficking crime; and possession of a firearm and ammunition by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year. (ECF No. 1.) On November 8, 2024, Mr. Loggins was arrested in connection with the Indictment. (ECF No. 5.) That same day, he appeared before United States Magistrate Judge Sharbaugh for an initial appearance. At that hearing, Mr. Loggins consented to detention without prejudice to his right to seek a detention hearing at a later date.

---

[10] It does not appear that any laboratory results have been provided for the suspected cocaine.

At this time, Mr. Loggins respectfully requests that this Court hold a detention hearing and order his release pending trial subject to conditions of electronic location monitoring.

## ARGUMENT

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (Moss, J.) (citing *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

The Bail Reform Act of 1984 mandates that pretrial detention is permissible only where:

> After a hearing pursuant to the provision of 18 U.S.C. § 3142(f) the judicial officer finds that *no condition or combination of conditions* will reasonably assure the appearance of the person as required and the safety of any other person and the community.

18 U.S.C. § 3142(e) (emphasis added). "To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir.), *judgment entered*, 844 F. App'x 373 (D.C. Cir. 2021) (citing 18 U.S.C. § 3142(f)). "[W]hen the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a preponderance of the evidence" *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir.

7

1996) (citation omitted). In evaluating whether the Government has met its burden, courts consider the factors found at 18 U.S.C. § 3142(g), which include: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."

The Bail Reform Act ultimately commands that district courts impose the "least restrictive further condition, or combination of conditions, that . . . will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

Even in cases like Mr. Loggins' where the Bail Reform Act creates a rebuttable presumption in favor of detention, that presumption operates merely to impose a burden of production on a defendant "to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). That burden of production, as this Court has recognized, is not heavy. *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016). Indeed, a defendant facing a rebuttable presumption of detention need only proffer "at least some evidence or basis to conclude that the case falls outside the congressional paradigm giving rise to the presumption." *Taylor*, 289 F. Supp. 3d at 63 (D.D.C. 2018) (internal citations omitted).

Here, Mr. Loggins has come forward with ample evidence to rebut the presumption of detention attached to the nonviolent offenses with which he is charged. Moreover, the Government has failed to proffer clear and convincing evidence of Mr. Loggins' danger to the community. Nor will the Government be able to meet its burden to show that there is no condition or combination of release conditions that can reasonably assure Mr. Loggins' presence in court as required and the safety of the community. Mr. Loggins respectfully submits that releasing him to the third-party custody of his mother on conditions of electronic location monitoring will adequately assure the safety of the community and his presence in court as this case progresses.

**Mr. Loggins Has Rebutted the Presumption of Detention**

The statutory presumption of detention poses no barrier to the release of Mr. Loggins. While Mr. Loggins was initially arrested solely on the basis of MPD's allegation that a small amount of promethazine was found at his feet, Mr. Loggins has been aware since June 7, 2024 that law enforcement contended that the items found in the Charger were evidence of criminal activity. Indeed, the Superior Court Gerstein affidavit alleges that Mr. Loggins unlawfully possessed the items found in the Charger. Nonetheless, the Government made the decision not to pursue formal charges against Mr. Loggins. Mr. Loggins remained in the community. On July 5, 2024, the United States Probation Office filed a Probation Petition in the supervised

release matter. The no-papered events of June 6 form the bulk of the allegations in the Petition. Mr. Loggins did not flee the jurisdiction. The Government did not seek Mr. Loggins' immediate detention on the basis of the Petition. On September 10, 2024, Mr. Loggins appeared before the Court for a re-entry progress hearing. Following the hearing, he was presented with search warrants which made clear that the Government was investigating the June 6 allegations. After the hearing, Mr. Loggins remained in the community. He did not flee.

The Government knew about the conduct alleged in this case for five months before it obtained an Indictment. Immediately after June 6, the Government could have sought a Criminal Complaint and Mr. Loggins' detention in connection with it. The Government did not do so. The Government could have sought Mr. Loggins' detention in the supervised release matter. It did not do so. The nature of the allegations has not changed since June 6. The Government does not claim that Mr. Loggins was arrested at any time between June 6 and November 8. Given that Mr. Loggins was already on release for several *months* while these allegations were outstanding and that he did not flee or sustain new arrests, Mr. Loggins submits that he has rebutted the presumption of detention.[11]

---

[11] Moreover, as discussed below, an analysis of the §3142(g) factors and Mr. Loggins' proposed conditions of release also serve to rebut the presumption of detention.

10

## The Nature and Circumstances of the Allegations and Weight of the Government's Anticipated Proffer Pose No Barrier to Imposing Reasonable Conditions of Pretrial Release

The Government has charged Mr. Loggins with three non-violent offenses. There is no allegation that Mr. Loggins was part of a larger conspiracy to distribute drugs. Nor has the Government charged Mr. Loggins with offenses related to fentanyl, a far more dangerous drug than cocaine. There is no allegation of Mr. Loggins' use of a firearm to harm or threaten another individual. A recent case from this Court demonstrates that the nature of the allegations in this case does not support Mr. Loggins' continued detention. In *United States v. Yates*, No. 24-cr-089-ACR, the Government filed an Indictment charging the defendant with possession with intent to distribute cocaine and cocaine base and possession of a machinegun in furtherance of a drug trafficking crime. The firearm offense carried a mandatory minimum term of incarceration of 30 years. The alleged criminal conduct occurred six months before the date of the Indictment. The defendant in that case was initially charged in Superior Court, where he had been ordered released pending trial. Judge Faruqui granted the defendant's motion to set conditions of release. The Government sought and obtained a stay of the release order and strenuously argued in an appeal that Judge Reyes should order the defendant detained. While the defendant had no prior convictions, the Government relied on uncharged allegations of gang affiliation, post-charge drug dealing, and technical violations of Superior Court

11

release conditions to support its request for detention. Judge Reyes denied the Government's appeal and set conditions of release.[12] The nature of the allegations in this case is less serious than that of the offenses at issue in *Yates*. Unlike in Mr. Loggins' case, the Government in *Yates* alleged that a firearm was recovered from the defendant's person. Moreover, in Mr. Loggins case, there is no allegation regarding a machinegun. Like the defendant in *Yates*, Mr. Loggins had been on conditions of release for several months after the arrest that resulted in federal charges. Simply put, the nature and circumstances of the non-violent allegations in this case do not support detention.

As to the second § 3142(g) factor, courts have recognized that "the weight of the evidence is the least important of the various factors." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). Additionally, courts "have cautioned that a district court assessing the weight of the evidence must not consider the evidence of defendant's guilt, but rather must consider only the weight of the evidence of the defendant's dangerousness." *United States v. Taylor*, No. 1:21-cr-392-RCL-2, 2021 U.S. Dist. LEXIS 150500, at *14 (D.D.C. Aug. 11, 2021) (internal quotation and citation omitted). Furthermore, Congress has mandated that no provision of the Bail

---

[12] The Government ultimately moved to dismiss the charges against defendant Yates.

Reform Act "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

In assessing the weight of the Government's proffer, this Court should consider that "[a] warrantless search is the quintessential intrusion and is presumptively unreasonable." *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014); *see also United States v. Gorham*, No. 23-0206 (ABJ), 2024 U.S. Dist. LEXIS 4953, at *9 (D.D.C. Jan. 10, 2024); *United States v. Wills*, 316 F. Supp. 3d 437, 444 (D.D.C. 2018) ("warrantless searches are presumed to be unreasonable"). The charges at issue in this case are based entirely on evidence that was obtained through the warrantless search of the Dodge Charger to which Mr. Loggins possessed the keys. As noted above, Mr. Loggins was removed from the premises of the apartment building and taken to a police station shortly after 4 p.m. The officers had already seized Mr. Loggins' car keys. Officers remained on scene for *six hours* to prevent anyone from accessing Apartment 101 and awaited a search warrant. Yet officers failed to obtain a warrant for the vehicle. This search will be the subject of a motion to suppress. Where charges are based wholly on evidence that is subject to a potentially meritorious and dispositive motion to suppress and where a defendant has known of the Government's allegations for months and nonetheless complied with terms of supervision, the weight of the evidence favors release.

There are other factors that diminish the weight of the Government's proffer. First, unlike in many firearms cases borne from warrantless street arrests, the Government did not recover a firearm from Mr. Loggins' person.[13] Second, there is no evidence of a controlled buy from Mr. Loggins. Mr. Loggins anticipates that the Government will rely on DNA testing results to argue the strength of its evidence that Mr. Loggins possessed the firearm. As noted above, the firearm was found in the course of a presumptively unlawful search. The Government submitted two sets of swabs from the firearm for DNA testing. The Government has produced a three-page report from the FBI DNA laboratory. It appears that the analyst was unable to conclude that Mr. Loggins' DNA was present on either set of swabs by means of a visual analysis of the DNA data. Accordingly, the analyst resorted to the use of STRmix, a probabilistic genotyping software. As to the first set of swabs, the analyst concluded that the sample contained a mixture of DNA from three individuals. As to the second set of swabs, the analyst concluded that the sample contained a mixture of DNA from four individuals. While the analyst received a result from the proprietary software indicating very strong support for Mr. Loggins' inclusion in the mixtures, the report is silent as to the quantum of Mr. Loggins' purported DNA

---

[13] Nor did the Government recover the alleged cocaine from Mr. Loggins' person.

profile as compared to the profiles of the other contributors.[14] Notably, the report does not label Mr. Loggins a major contributor to either mixture. As the Court is aware, DNA analysts cannot make conclusions regarding how or when a person's DNA came to be on an object. Indirect transfer – especially in the context of low-quality DNA mixtures – is a factor to consider. And, as noted above, there is no evidence that Mr. Loggins *used* a firearm to threaten or harm another person. Given all of these considerations, the weight of the evidence in this case fails to establish dangerousness and instead favors release.

### Mr. Loggins' History and Characteristics Demonstrate That His Release Pending Trial Would Not Pose a Danger to the Community

Mr. Loggins is 23 years old. He was born in Washington, D.C. and has resided in the metropolitan area his entire life. Mr. Loggins is the proud father of a young son. He is in a committed relationship with his fiancé, Shanice Rocke. Mr. Loggins and Ms. Rocke are expecting a child in the coming months. Mr. Loggins' mother Tammy Talley is supportive of her son. Mr. Loggins enjoys close relationships with his siblings. He comes before the Court with one prior conviction for a non-violent drug offense. He has no history of willfully failing to appear for court.[15] Apart from

---

[14] Mr. Loggins requests that the Government produce the entire laboratory case file so that he can review the analyst's underlying data and conclusions and obtained the services of his own expert.

[15] The pretrial services report (ECF No. 6) reflects the issuance of a bench warrant on January 21, 2020 in D.C. Superior Court case number 2019-CF2-016002. A

the alleged circumstances at issue in this case, Mr. Loggins has been compliant with his terms of supervised release. The Petition in the supervised release matter alleges that Mr. Loggins failed to report an arrest in March 2024. However, it bears noting that the arrest was no papered the next day. Moreover, notwithstanding the June 6 allegations, the United States Probation Office did not seek Mr. Loggins' detention in the supervised release matter. Instead, Probation recommended that the Court schedule a re-entry hearing. The Court did so, and Mr. Loggins appeared as instructed.

As for the final § 3142(g) factor, the Government bears the burden of proving by clear and convincing evidence that Mr. Loggins "presents an identified and articulable threat to an individual or the community[.]" *United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021); *see also Taylor*, 2021 U.S. Dist. LEXIS 150500, at *21 (noting that a district court must make a "forward-looking determination in its dangerousness assessment") (internal quotation and citation omitted). Mr. Loggins was first arrested in connection with the alleged offenses nearly eight months ago. For five months after his arrest, Mr. Loggins remained in the community without threatening or harming anyone. There is no allegation of

---

review of the docket in that case reveals that the bench warrant was quashed the same day it was issued. Mr. Loggins, who was 18 years old at the time, appeared late for court. After Mr. Loggins appeared later that morning, the Superior Court quashed the warrant and rescheduled the hearing. The charges in that case were ultimately dismissed.

violence in this case. Mr. Loggins has no prior convictions for crimes of violence. Given Mr. Loggins' history and characteristics and the lack of any evidence that he poses any identified or articulable threat of danger, this Court should set conditions of release.

### Strict Conditions of Pretrial Release Will Assure Mr. Loggins' Appearance and the Safety of the Community

Mr. Loggins respectfully submits that with conditions of location monitoring and regular reporting to Pretrial Services, he will be successful on pretrial release and the safety of the community will be reasonably assured. Mr. Loggins' mother has agreed to serve as a third-party custodian in this matter. She resides in Prince George's County, and there are no firearms in the home.[16] The proposed conditions will amply satisfy the goals of the Bail Reform Act.

### **CONCLUSION**

Mr. Loggins is a 23-year-old father with no prior convictions for violent offenses. He is a lifelong resident of the D.C. area. He has been incarcerated in this case for nearly three months. He is charged with nonviolent offenses and has been was aware of the Government's investigation well before the return of the federal Indictment. In the months between the no papered Superior Court arrest and the

---

[16] The undersigned counsel will provide Ms. Talley's name and contact information to Pretrial Services.

17

initiation of this case, Mr. Loggins remained in the community on supervised release. This Court can and should impose conditions of release that will assure Mr. Loggins' presence in court and the safety of the community. Mr. Loggins respectfully requests a hearing on this Motion.

Respectfully submitted,

S/_____
Michael E. Lawlor
Adam C. Demetriou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I hereby certify that on this day, February 3, 2025, a copy of the foregoing was sent via ECF to the United States Attorney's Office for the District of Columbia.

s/_____
Michael E. Lawlor